UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDGE COTE

| | |
|---|---|
| NATTYMAC, LLC, doing business as NATTYMAC CAPITAL, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>FIRST WEST MORTGAGE BANKERS, LTD., a domestic business corporation registered in the State of New York; RICHARD TSCHERNIA, individually as Guarantor and as Director of FIRST WEST MORTGAGE BANKERS, LTD.; ESTATE OF BERNARD TSCHERNIA, Deceased, individually as Guarantor and as President of FIRST WEST MORTGAGE BANKERS, LTD.; and DOES 1 through 10, inclusive,<br><br>    Defendants. | CASE NO.: 08 CV 1204<br><br>**COMPLAINT FOR DAMAGES**<br><br> |

Plaintiff NATTYMAC, LLC, doing business as NATTYMAC CAPITAL, LLC, brings this action against Defendants FIRST WEST MORTGAGE BANKERS, LTD., RICHARD TSCHERNIA and the ESTATE OF BERNARD TSCHERNIA, for damages arising from their material failure to comply with their contractual repurchase and guarantor obligations. In support hereof, Plaintiff hereinafter alleges, as follows:

I.

**PARTIES**

1.    Plaintiff NATTYMAC, LLC, doing business as NATTYMAC CAPITAL, LLC ("NATTYMAC") is, and at all times herein mentioned was, a limited liability company duly organized under the laws of the State of Delaware, with its principal place of business in the State of Florida, and licensed to do, and doing business in, the State of New York. NATTYMAC is, and at all times mentioned herein was, in the business of extending purchase facilities to residential mortgage lenders.

2. NATTYMAC is informed and believes and thereon alleges that Defendant FIRST WEST MORTGAGE BANKERS, LTD., ("FIRST WEST") is, and at all times mentioned herein was, a domestic business corporation duly organized under the laws of the State of New York. NATTYMAC is informed and believes and thereon alleges that FIRST WEST's principal place of business is in the County of Nassau, State of New York, and that FIRST WEST is, and at all times herein mentioned was, registered by the New York Department of State, Division of Corporations, to do business in the State of New York. FIRST WEST was and/or is in the business of originating and funding residential mortgage loans and selling closed loans to secondary market investors.

3. NATTYMAC is informed and believes and thereon alleges that Defendant RICHARD TSCHERNIA ("TSCHERNIA") is, and at all times mentioned herein was, an individual residing in the County of Nassau, State of New York, and the Director of FIRST WEST.

4. NATTYMAC is informed and believes and thereon alleges that Defendant ESTATE OF BERNARD TSCHERNIA ("ESTATE") is, and at all times mentioned herein was, the estate of Bernard Tschernia ("Bernard"), who was the President of FIRST WEST and who became deceased on or about August 15, 2007. NATTYMAC is informed and believes and thereon alleges that the ESTATE has been probated in the County of Nassau, State of New York.

5. NATTYMAC is informed and believes and thereon alleges that TSCHERNIA had assumed his father Bernard's role as President of FIRST WEST after Bernard's death. Both TSCHERNIA and the ESTATE are hereinafter, collectively, referred to as the "GUARANTORS."

6. NATTYMAC is informed and believes and thereon alleges that each Defendant, whether specifically named or designated herein as a DOE, was the agent, representative, servant, employee, principal, joint venturer, co-conspirator, and/or

representative of each of the remaining co-defendants and, in doing the acts hereinafter alleged, were acting within the course and scope of said agency, employment, joint venture, conspiracy, alter ego, agreement, and/or service with the approval, knowledge, authority, permission and/or consent of the remaining Defendants.

## II.

### JURISDICTION AND VENUE

7.      The jurisdiction of this Court over the subject matter of this action, is predicated upon 28 U.S.C. §1332. The matter in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00 and complete diversity of citizenship exists.

8.      Venue is proper in the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. §1391(a), in that NATTYMAC is informed and believes and thereon alleges that all the Defendants are subject to personal jurisdiction in this judicial district. Further, jurisdiction and venue in this Court is proper on the basis that the contract which is the subject of this lawsuit, the Master Purchase and Sale Agreement ("Master Agreement"), contains a venue provision, which states:

> **Section 7.02 Governing Law.** THIS AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK (INCLUDING SECTIONS 5-1401 AND 5-1402 OF THE GENERAL OBLIGATIONS LAW... AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORANCE WITH SUCH LAWS. <u>EACH PARTY HERETO HEREBY SUBMITS TO THE NON-EXCLUSIVE JURISDICTION OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK</u> AND OF ANY NEW YORK STATE COURT SITTNG IN THE BOROUGH OF MANHATTAN IN NEW YORK CITY. [emphasis added.]

A true and correct copy of the Master Agreement, dated December 6, 2005, is attached hereto as Exhibit "A" and incorporated herein by reference.

## III.

## GENERAL ALLEGATIONS

9. On or about December 6, 2005, Defendant FIRST WEST entered into the Master Agreement with NATTYMAC. (See Exh. "A".) Pursuant to the terms of the Master Agreement, NATTYMAC agreed to the purchase of residential mortgage loans ("Mortgage Loans") from FIRST WEST, through the use of a credit facility, whereby FIRST WEST used such facility to close, fund and temporarily sell Mortgage Loans to NATTYMAC until a permanent purchaser/investor for the Mortgage Loan was obtained and the Mortgage Loan repurchased.

10. On or about December 7, 2005, the deceased Bernard, whose ESTATE is being sued, entered into a valid and binding Continuing Guaranty with NATTYMAC, which Continuing Guaranty was part and parcel to the Master Agreement and which was not revoked or otherwise discontinued as to the subject matter of this Complaint. (A true and correct copy of the "Continuing Guaranty", is attached hereto as Exhibit "B" and incorporated herein by reference.) Pursuant to the terms of the Continuing Guaranty, Bernard "absolutely, irrevocably and unconditionally guarantee[d] and promise[d] to pay or perform the 'Obligations' of the Seller [FIRST WEST] set forth in the Master Agreement upon demand of Buyer [NATTYMAC]." (See Exh. "B," "Continuing Guaranty," Sec. 1).

11. On or about April 10, 2007, Defendant TSCHERNIA, as President of FIRST WEST subsequent to Bernard's death, entered into a valid and binding Guaranty agreement with NATTYMAC, which Guaranty was part and parcel to the Master Agreement and which was not revoked or otherwise discontinued as to the subject matter of this Complaint. (A true and correct copy of the "Guaranty", is attached hereto as Exhibit "C" and incorporated herein by reference.) Pursuant to the terms of the Guaranty, in connection with the aforementioned Master Agreement, TSCHERNIA "unconditionally guarantee[d] the full and prompt payment when due, whether by acceleration or otherwise, and at all times thereafter of all obligations of the Seller [FIRST WEST] to the Buyer [NATTYMAC], … and to pay all expenses

(including, attorneys' and legal assistants' fees... and legal expenses) paid or incurred by the Buyer in endeavoring to collect the Liabilities, or any part thereof, and in enforcing this guaranty." (See Exh. "C," "Guaranty," Sec. 1).

12. In consideration for NATTYMAC's agreeing to extend the foregoing facility, FIRST WEST agreed to convey and otherwise transfer to NATTYMAC all of its rights, titles and interests in and to the Mortgage Loans that it funded and closed through the use of the facility—with the express representation, condition and consideration that there would be an Approved Investor that would subsequently purchase the relevant Mortgage Loans from NATTYMAC within a specific time frame. (See Exh. "A" and below.)

13. In the event Defendant FIRST WEST failed to sell each loan or loan(s) to an Approved Investor within the time frame set forth in the Master Agreement, the Master Agreement provides for a "curtailment payment" schedule (i.e., the Master Agreement specifies the amounts to be paid to NATTYMAC, depending upon the length of time the unsold loan or loans remain unsold to an Approved Investor and remain on NATTYMAC's books). (See Exh. "A".)

14. Pursuant to the Master Agreement, FIRST WEST has ninety (90) days from the date of NATTYMAC's purchase of the loan(s) ("Purchase Date") to arrange for an Approved Investor to purchase the Mortgage Loan(s). If FIRST WEST fails to sell the Mortgage Loan(s) within ninety (90) days of the Purchase Date, the Master Agreement requires FIRST WEST to make a non-refundable payment equal to 8% of the purchase commitment amount(s) of such Mortgage Loan(s) against its obligation to repurchase the loan(s) if an approved investor is not arranged. (See Exh. "A", Sec. 3.05(c)(i).)

15. Also, pursuant to the Master Agreement, if the Mortgage Loan(s) remain unsold for 120 days of the Purchase Date, FIRST WEST is required to make an additional payment equal to 10% of the purchase commitment (for a cumulative aggregate amount of 18%) of such Mortgage Loan(s) against its obligation to repurchase. (See Exh. "A", Sec.

3.05(c)(ii).)

16. Further, pursuant to the Master Agreement, if the Mortgage Loans remain unsold for 150 days of the Purchase Date, FIRST WEST is to make an additional payment equal to 10% of the purchase commitment (for a cumulative aggregate amount of 28%) of such Mortgage Loan against its obligation to repurchase. (See Exh. "A", Sec. 3.05(c)(iii).)

17. Thereafter, pursuant to the terms of the Master Agreement, if the Mortgage Loan(s) have not been sold within 180 days of the Purchase Date and FIRST WEST has not cured the breach, FIRST WEST must repurchase such Mortgage Loan(s) for a price equal to the repurchase amount(s). (See Exh. "A", Agreement Sec. 3.05(c)(iv).)

18. Under the terms of the Master Agreement, FIRST WEST's failure to make the Curtailment Payments constitutes a default of the Master Agreement:

> 1. **Default.** The term "Default" means the existence or occurrence of any one or more of the following:
> (a) ***Obligation.*** Seller fails to pay any obligation when due under this Agreement.
> (b) ***Covenants.*** Seller fails to punctually and properly perform, observe, and comply with any covenant, agreement, or condition contained herein, and that failure continues for a period of five (5) calendar days after Seller has, or, with the exercise of reasonable investigation, should have, notice of it. (See Exh. "A", Schedule VI-1, "Defaults and Remedies".)

19. Under the terms of the Master Agreement, in the event of default by FIRST WEST, NATTYMAC is authorized under the Master Agreement to dispose of the relevant Mortgage Loan(s) in any manner it deems necessary to protect its interests under the provisions of the mortgage documents. (See Exh. "A".)

20. Under the terms of the Master Agreement (Exh. "A," Sec. 3.05(d)), in the event of default by FIRST WEST, NATTYMAC may demand that the defaulted loan(s) be repurchased by FIRST WEST, and, in addition, require FIRST WEST to indemnify NATTYMAC for its losses in connection with the defaulted loan(s):

> (d) In addition to the obligations set forth in this Section 3.05, Seller shall indemnify Buyer and its assigns, to the fullest

extent permitted by applicable law, from and against any and all demands, claims, actions or causes of action, assessments, losses, diminution in value, liabilities, costs or expenses, including interest, penalties, reasonable attorneys' fees and other related and reasonable professional fees and expenses of any nature whatsoever, asserted against, or paid, suffered or incurred, by Buyer or its assigns and resulting from or arising out of a breach of its representations and warranties contained in this Agreement… . It is understood and agreed that the obligations of Seller set forth in this Section 3.05 to cure, to make other Curtailment Payments or to purchase a Mortgage Loan and to indemnify Buyer and its assigns constitute the sole remedies of each such Person respecting a breach of the representations and warranties contained in this Agreement… .

Such repurchase and indemnification is absolutely guaranteed by the ESTATE and TSCHERNIA in the Continuing Guaranty and Guaranty (hereinafter, collectively, referred to as "Guaranty Agreements," Exhs. "B" and "C.").

21.     At issue in this action, are at least 5 (five) loans that were sold by FIRST WEST to NATTYMAC, which loans were never purchased by Approved Investors within the requisite time frame, whereafter FIRST WEST and the GUARANTORS failed to make the required 'curtailment payments' on proper demand of NATTYMAC and which loans FIRST WEST and the GUARANTORS ultimately failed to repurchase on proper demand of NATTYMAC to do so. The 5 (five) loans at issue, include, but are in no way limited to, as follows:

(a)     Borrower: Nicholas J. Porazzo, Loan No. 9000008027, for the purchase of 266 West Street, Randolph, MA 02368; note amount $215,250.00; note date April 26, 2007.

(b)     Borrowers: Ronald L. Romaine and Wilma H. Romaine, Loan No. 30073, for the purchase of 4120 West Sally Circle, Pahrump, NV 89048; note amount $111,600.00; note date May 23, 2007.

(c)     Borrowers: Juan Diaz and Luis A. Palaez, Loan No. 19937, for the purchase of 27 Rosewood Street, Central Islip, NY 11722; note amount $60,000.00; note date March 9, 2007.

(d) Borrower: Maria Espinal, Loan No. 20025, for the purchase of 245 Leonardo Da Vinci Street, Copiague, NY 11726; note amount $172,000; note date May 4, 2007.

(e) Borrower: Najat Handou, Loan No.01321926, for the purchase of 5 Dreyer Avenue, Staten Island, NY 10314; note amount $374,850; note date March 28, 2007. The above-described loans are hereinafter collectively referred to as the "Loans."

22. FIRST WEST and the GUARANTORS failed to comply with and remain in material breach of the Master Agreement, in that they failed to obtain Approved Investors to purchase the Loans from NATTYMAC, they then failed to make the required "curtailment payments" to NATTYMAC, and, finally, they failed to repurchase the Loans from NATTYMAC.

23. For its part, NATTYMAC was and remains in full compliance with the Master Agreement and Guaranty Agreements, had provided all appropriate notifications to both FIRST WEST and the GUARANTORS (i.e., NATTYMAC has been attempting to enforce the terms of the Master Agreement, the Continuing Guaranty, and the Guaranty for more than five (5) months now), and neither FIRST WEST nor the GUARANTORS have any valid defense to their material breaches of the Master Agreement and related Guaranty Agreements (e.g., their failure to have Approved Investors purchase the Loans, their failure to make the necessary "Curtailment Payments", their failure to repurchase the Loans from NATTYMAC and their failure and/or refusal to indemnify NATTYMAC).

24. As a direct and proximate result of the foregoing, NATTYMAC has suffered damages and will continue to suffer damages in a final amount to be proven at trial, but which are expected to exceed $418,514.39, exclusive of interest, costs, and attorneys' fees.

**FIRST CAUSE OF ACTION**
**FOR BREACH OF CONTRACT**
**(Against All Defendants)**

25. Plaintiff NATTYMAC re-alleges and incorporates each of the allegations

contained in preceding and subsequent paragraphs of this Complaint as though fully set forth herein.

26.     On or about December 6, 2005, Defendants FIRST WEST, TSCHERNIA, and the now deceased Bernard, whose ESTATE is being sued, entered into a complete, valid and enforceable Master Agreement with NATTYMAC and/or complete, valid and enforceable Guaranty Agreements. (See Exhs. "A," "B," and "C.")

27.     Among the many terms contained within The Master Agreement, it includes: (a) specific terms and conditions in the event that Defendants fail to sell each loan to an Approved Investor, setting forth a "curtailment payment" schedule depending on the length of time each loan or loans remain unsold to Approved Investors; (b) a repurchase obligation in event of default; and (c) indemnification by FIRST WEST from NATTYMAC's losses in connection with the defaulted loan(s) -- which repurchase and indemnification is absolutely guaranteed by the ESTATE and TSCHERNIA pursuant to the Guaranty Agreements. (See Exhs. "A," "B," and "C.")

28.     Defendants have failed to pay or perform their contractual obligations under the Master Agreement and the Guaranty Agreements, specifically, in that Defendants: (a) failed to make Curtailment Payments under the Master Agreement; (b) failed to repurchase the Loans upon demand by NATTYMAC; (c) failed to indemnify NATTYMAC when required to do so; and (d) failed to facilitate performance of FIRST WEST's obligations under the Master Agreement as promised in the Guaranty Agreements. (See Exhs. "A", "B" and "C".)

29.     While NATTYMAC has performed all the terms, conditions and covenants required to be performed by it under the terms of the three agreements at issue, aside from any terms, conditions and covenants that were excused, discharged and/or waived, the Defendants were and continue to be in material breach of the Master Agreement and the Guaranty agreements (i.e., NATTYMAC has been attempting to enforce the terms of the

Master Agreement and the Guaranty Agreements, and has provided all appropriate notifications to both FIRST WEST and the GUARANTORS for many months). (See Exhs. "A", "B" and "C".)

30. As a direct and proximate result of the Defendants material contract breaches, NATTYMAC has suffered damages and will continue to suffer damages in a final amount to be proven at trial, but which are expected to exceed $418,514.39, exclusive of interest, costs, and attorneys' fees.

31. WHEREFORE, Plaintiff NATTYMAC prays for relief as hereinafter set forth below.

## SECOND CAUSE OF ACTION
## FOR BREACH OF WARRANTY
### (Against All Defendants)

32. Plaintiff NATTYMAC re-alleges and incorporates each of the allegations contained in the preceding and subsequent paragraphs of the Complaint as though fully set forth herein.

33. Defendants, at all times relevant herein, had a duty to act fairly and in good faith with NATTYMAC in performing under the terms of the Master Agreement and the Guaranty Agreements.

34. Defendants FIRST WEST, TSCHERNIA and ESTATE expressly and implicitly guaranteed performance of all of Defendants' obligations under the Master Agreement and Guaranty Agreements." (See Exhs. "A," "B" and "C.")

35. FIRST WEST, the "ESTATE," and TSCHERNIA breached their warranties in that Defendants: (a) failed to make Curtailment Payments under the Master Agreement; (b) failed to repurchase the Loans upon demand by NATTYMAC; (c) failed to indemnify NATTYMAC when required to do so; and (d) failed to facilitate performance of FIRST WEST's obligations under the Master Agreement as promised in the Guaranty Agreements. (See Exhs. "A," "B," and "C.")

37. As a direct and proximate result of FIRST WEST, ESTATE, and TSCHERNIA's breaches of warranty, NATTYMAC has suffered damages and will continue to suffer damages in a final amount to be proven at trial, but which are expected to exceed $418,514.39, exclusive of interest, costs, and attorneys' fees.

38. WHEREFORE, Plaintiff NATTYMAC prays for relief as hereinafter set forth below.

### THIRD CAUSE OF ACTION
### FOR BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
(Against All Defendants)

39. Plaintiff NATTYMAC re-alleges and incorporates each of the allegations contained in the preceding and subsequent paragraphs of the Complaint as though fully set forth herein.

40. Defendants at all times relevant herein, had a duty to act fairly and in good faith with NATTYMAC in performing under the terms of the Master Agreement, the Continuing Guaranty agreement and the Guaranty agreement.

41. Implied in the Master Agreement is Defendants' obligation to act fairly and in good faith with NATTYMAC by making good faith efforts to sell the Loans or make payments to NATTYMAC according to the payment schedule set forth in Section 3.05 of the Master Agreement; and not to frustrate the purpose of NATTYMAC's entitlement to the benefits of its investment of these Loans under the Master Agreement.

42. Defendants breached their obligation to act fairly and in good faith toward NATTYMAC.

43. As a direct and proximate result of the foregoing, NATTYMAC has suffered and will continue to suffer damages in a final amount to be proven at trial, but in no event less than $418,514.39, exclusive of interest, costs, fees, and punitive damages.

44. WHEREFORE, Plaintiff NATTYMAC prays for relief as hereinafter set forth below.

### FOURTH CAUSE OF ACTION
### FOR UNJUST ENRICHMENT
### (Against All Defendants)

45.   Plaintiff NATTYMAC re-alleges and incorporates each of the allegations contained in the preceding and subsequent paragraphs of the Complaint as though fully set forth herein.

46.   Defendants have benefited by the intentional withholding of funds due NATTYMAC which Defendants wrongfully enjoyed at the expense and detriment of NATTYMAC.

47.   Such benefits were conferred by Defendants' willful refusal to make payments to NATTYMAC or repurchase the Loans under the Master Agreement, and/or as a result of other unjust measures at the expense and detriment of NATTYMAC.

48.   As a direct and proximate result of the foregoing, NATTYMAC has suffered and will continue to suffer damages in an amount to be proven at trial, but in no event less than $418,514.39, exclusive of interest, costs and fees.

49.   WHEREFORE, Plaintiff NATTYMAC prays for relief as hereinafter set forth below.

### FIFTH CAUSE OF ACTION
### FOR MONEYS HAD AND RECEIVED
### (Against All Defendants)

50.   Plaintiff NATTYMAC re-alleges and incorporates each of the allegations contained in the preceding and subsequent paragraphs of the Complaint as though fully set forth herein.

51.   On or about December 6, 2005, and thereafter, Defendants became indebted to NATTYMAC for money had and received due to the failure to perform under the terms of the Master Agreement as alleged in more detail above.

52.   Neither whole not any part of the funds due in connection with the Loans have

been paid to NATTYMAC, although demand therefore has been made, and there is now due and owing, and unpaid from Defendants to Plaintiff the amount of $418,514.39, exclusive of interest, costs and fees as of August 31, 2007.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff NATTYMAC prays for Judgment against Defendants, and each of them as, as follows:

First Cause of Action (Breach of Contract) Against All Defendants:

1. For general damages according to proof;
2. For special damages of at least $418,514.39 and additional amounts according to proof;
3. For attorneys' fees, and cost of suit; and,
4. For such other and further relief as the Court may deem just and proper.

Second Cause of Action (Breach of Warranty) Against All Defendants:

1. For general damages according to proof;
2. For special damages of at least $418,514.39 and additional amounts according to proof;
3. For attorneys' fees, and cost of suit; and,
4. For such other and further relief as the Court may deem just and proper.

Third Cause of Action (Breach of the Implied Covenant of Good Faith and Fair Dealing) Against All Defendants:

1. For general damages according to proof;
2. For special damages of at least $418,514.39 and additional amounts according to proof;
3. For attorneys' fees, and cost of suit; and,
4. For such other and further relief as the Court may deem just and proper.

<u>Fourth Cause of Action (Unjust Enrichment) Against All Defendants</u>:

1. For general damages according to proof;

2. For special damages of at least $418,514.39 and additional amounts according to proof;

3. For attorneys' fees, and cost of suit; and,

4. For such other and further relief as the Court may deem just and proper.

<u>Fifth Cause of Action (Moneys Had and Received) Against All Defendants</u>:

1. For general damages according to proof;

2. For special damages of at least $418,514.39 and additional amounts according to proof;

3. For attorneys' fees, and cost of suit; and,

4. For such other and further relief as the Court may deem just and proper.

Dated:  January 25, 2008                Respectfully submitted,

AMERICAN MORTGAGE LAW GROUP, PC

By _____
Evans D. Prieston, Esq.
James W. Brody, Esq.
75 Rowland Way, Suite 350
Novato, California  94945
Telephone:  (415) 878-0030
Facsimile:  (415) 878-0035

Attorneys for Plaintiff,
NATTYMAC CAPITAL LLC